Fulton *v.* Woodman

---

## DAVID M. FULTON *v.* J. F. WOODMAN.

1. *Scott* v. *Billgerry* cited and explained.
2. SPECIAL COURT OF EQUITY: JURISDICTION.—The Special Court of Equity has jurisdiction of all matters that properly belong to courts of equity in reference to contracts for cotton and other personal property.
3 SAME : CASE IN JUDGMENT.—F. agreed with W. to give him one third of his cotton to gin and bale it, and furnish bagging and rope, and in consideration thereof, W. agreed to cultivate the farm of F. for the year 1864, and to give him one-third of the corn and cotton when gathered. W., by his neglect and fraudulent conduct, only made one bale and a half of cotton and one thousand bushels of corn. Held—That the Special Court of Equity had jurisdiction of a petition filed for a rescission of the contract, and to state an account between the parties.
4 SAME: CASE IN JUDGMENT.—In the fall of 1863, F. agreed with W. to give him,

one-half of the cotton that he would gather of the growing crop on the planta-
tion of F.   W. gathered thirty-three bales.   In 1865, W. removed twenty of the
bales of cotton gathered under the contract, against the consent of F.   Held—
That the remedy of F. was at law, and that the Special Court of Equity had no
jurisdiction.

5. SAME : CASE IN JUDGMENT.—W., for the year 1865, agreed to cultivate the farm
of F. with twenty-five laborers, to put one hundred acres in cotton and two
hundred in corn, and to employ an overseer ; F. to furnish two laborers and to
receive one-half of the corn and cotton.   W. employed no overseer, planted no
cotton, and by neglect and mismanagement made an entire failure in a crop.
Held—That the remedy of F. was at law, and that the Special Court of Equity
had no jurisdiction.

APPEAL from the Special Court of Equity at Jackson.   Hon.
George T. Swann, judge.

. *Anderson* and *F. Smith,* for appellant.

. That the Special Court of Equity had such jurisdiction as
pertains to courts of equity generally, in matters of personal
property, and no more.

2. That the contract of March 12, 1864, constituted and
established a partnership between the parties; and this con-
tract was the foundation of the proceeding in the court below.
Collyer on Part., pages 8, 10, 14, 15, 17, 18, 19, and note, page
14.

3.That courts of equity have uniformly exercised the power
of rescission of contracts of chattels, where either party has the
right to rescind, to dissolve partnerships, and state an account
between the partners.   Collyer on Part. 143, 152 ;  2 Story's Eq.,
sections 72, 74;  *Washington* v. *McIntosh,* 37 Miss. R. 671 ;
*Townsend* v. *Hurst,* Ib ; *Bradbury* v. *Keyes,* 5 J. J. Marshall,
446 ; *Alexander* v. *Murland,* 2 Dessausure, 162 ; *Garner* v.
*Garner,* 1 Ib. 437 ; *Morrison* v. *McLew,* 2 Dev. & Bat. Eq. R.
221 ;  *Drisco* v. *Fortner,* 5 Porter, 9 ;  *Robinson* v. *Kew,* 1 B.
Monroe, 87 ;  *Tibbs* v. *Timberlake,* 4 Littell, 12 ;  *Lott* v. *Reneck,*
1 B. Monroe, 63.

*W. & J. R. Yerger,* and  *T. J. & F. Wharton,* for appellee,
argued the cause at length upon its merits, and insisted that

the case of *Scott* v. *Billgerry*, was decisive of the question of the jurisdiction of the court.

HARRIS, J., delivered the opinion of the court.

Appellant filed his petition in the Special Court of Equity on September 18, 1865, in which he states, that in the fall of 1863, he agreed with one Wilson, agent of appellee, to give him one-half of all cotton he should gather of the growing crop of 1863, on appellant's plantation in Madison county; that under said contract said agent gathered thirty-three bales, weighing fourteen thousand eight hundred and ninety-five pounds. That on March 12, 1864, it was agreed between appellant and appellee, that as appellee had bagging and rope and twenty-five hands on appellant's place, and there were about three hundred bales of the cotton crops of the years 1861 and 1862 not baled on said place, belonging to appellant, that appellant would allow appellee one-third of said cotton that he would gin and bale; and appellee further agreed on his part to cultivate said plantation and make a crop for the year 1864, with his twenty-five hands, and give appellant one-third of the corn and cotton, when gathered. That during the year 1864, and the spring of 1865, appellee ginned and baled one hundred and sixty-two bales of appellant's cotton, raised in 1861 and 1862, weighing seventy-six thousand seven hundred and forty-four pounds. That by the neglect and fraudulent conduct of appellee he only made one bale and a half of cotton, and one thousand bushels of corn, in the year 1864, under said contract. That in February, 1865, appellee agreed with appellant to cultivate said plantation for the year 1865, with twenty-five hands; appellant agreeing to add two hands to that number, and appellee agreeing to employ an overseer, and to put one hundred acres in cotton and two hundred acres in corn—appellant to receive one-half of the cotton and corn, as his share, when gathered; that appellee failed to employ an overseer, planted no cotton, and by his neglect and mismanagement made an entire failure. That about January 1, 1865, appellee requested appellant to permit him to take off all the one hundred bales then ginned; and in April,

1865, he made a similar request as to the sixty-two bales, *then* ginned. Appellant agreed to these requests, on the express promise of appellee to return said cotton when required by appellant. That about August 1, 1865, appellee proposed to gin the balance of the cotton crops of 1861 and 1862, which appellant refused to permit him to do, on account of his unreasonable delay, neglect and fraudulent conduct; appellant then demanded an account and settlement of all matters between them, which appellee refused. That afterwards, on the 8th of September, 1865, appellee by force removed twenty bales of the thirty-three bales of cotton, gathered by his agent of the crop of 1863, of which appellant was entitled to one-half.

Appellant further states that, in March, 1864, when appellee took possession of his plantation, it was in good order and repair; but by the neglect of appellee, and the depredations of his hands and agents, his plantation has been greatly damaged.

This petition prays for a decree that appellee deliver to him one hundred and eight bales of cotton, weighing fifty-one thousand one hundred and sixty-three and a half pounds, being two-thirds of the one hundred and sixty-two bales; and five and a half bales, being the excess of the thirty-three bales of the crop of 1863, removed by him by force; or that he pay appellant the value in money of said cotton and ten per cent. damages; and for an account; or for such other and further relief, etc.

On the 3d October, 1865, by leave of the court, appellant filed an amended petition, making the original petition a part thereof. In this last petition he states that since filing the original, appellee took forcible possession of the balance of the cotton of the crop of 1861 and 1862, and proceeded to gin the same. Appellant applied to the military commander at Canton and obtained a guard to stop the ginning said cotton; that appellee then obtained an order from superior military authority, removing said guard, and again took possession and was proceeding to gin it, and would remove it away unless prevented by the interposition of the court; and prays for a rescission of the contract, and an injunction, etc., and also for

such other and further relief, etc.	Injunction was allowed on this petition as prayed for.

Upon the petition of appellee a cross-injunction was granted.

Upon the answer of appellee to the original and amended petitions, and upon full proof, the cause was submitted to the special judge in equity.

A decree was rendered dismissing the original and amended petition and cross-petition, and the case is brought to this court on appeal by the original petitioner, Fulton, who assigns for error here the dismissal of his original and amended petitions, and the refusal to grant the relief thereon prayed for.

It is admitted in the argument of the cause here, that the decree in the court below was founded upon the opinion that under the decision of this court in the case of *Scott* v. *Billgerry* (case not yet reported), that the Special Court of Equity could not take jurisdiction of this cause.

It was held by this court, in the case referred to, that this Special Court of Equity, constituted by the order of the provisional governor of this State, had only such jurisdiction as properly pertains to a court of equity ; and could not take cognizance of causes of common law jurisdiction.   That by the very terms of the order of the provisional governor, the special judge was invested " with EQUITY JURISDICTION in all contracts for cotton or, other personal property in this State, with power to proceed in a summary way on petition, to enforce specific performance, or *rescind* contracts, on notice to parties," etc.   That by the use of the appropriate and technical language " *Equity jurisdiction*," this court could not be advised of the *intention* of the provisional governor to confer general *common law*, as well as *equity* "jurisdiction in all contracts for cotton or other personal property."   That " *equity jurisdiction*" must be held to mean something different from "*jurisdiction*" generally. And if any meaning is given to the word " *equity*," in this connection, it must be held to qualify and limit the "*jurisdiction*" conferred on the special judge, to such as properly belongs to a court of equity, in contradistinction to the "jurisdiction of courts of common law."

It follows, therefore, that if the case presented in this record shows good ground for the interposition of *a court of equity*, the special judge had "equity jurisdiction," as it was a "contract for cotton."

So far as relates to the contract of March, 1864, from the statements in the several petitions, the answer of appellee, and the proofs taken in the cause, it seems clear to us, that *as a bill for rescission of that contract, and an account* between these parties, the jurisdiction of the court is unquestionable.

The fraud, neglect, and imposition of the appellee throughout the transaction, we think manifest; and to allow the further possession and appropriation by him, at this late day, of the balance of the crops of 1861 and 1862, would be iniquitous instead of equitable.

So far as relates to the contract in the fall of 1863, with Wilson, as agent of appellee, under which the thirty-three bales of cotton were picked out, ginned and baled, as well as the contract for February, 1865, in relation to the cultivation of appellant's plantation by appellee, the petitions were properly dismissed, the appellant having a complete remedy at law, and showing no ground for equitable interposition.

But for the error in dismissing appellant's petition, praying a rescission of the contract of the 12th March, 1864, and for an account, the decree of the special judge below is reversed, and a decree directed to be entered in this court rescinding said contract, and referring it to a master or commissioner to take and state an account of the dealings and transactions of the parties under said contract, charging the said appellee with the highest market value of two-thirds of the one hundred and sixty-two bales of cotton received by appellee under said contract and subsequent assent of appellant; said market value to be assessed between the date of appellee's refusal to redeliver said cotton to appellee, and the date of such account to be taken by the master or commissioner; and with directions to credit said appellee with all loans of money and actual advances made by him to the appellant.

And further to charge said appellee with all injury to and

losses of the cotton of the years 1861 and 1862, either in the seed or lint, or in bale, occasioned by his neglect, while in his possession under said contract, to gin and bale it; and to report the same to the court below for its further action, and for such other proceedings as are usual in equity; and that this cause be remanded to that court for further action.